## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF NEW MEXICO

YVONNE VIGIL,

       Plaintiff,

v.                                        No. Civ. 04-0863 LH/RLP

LOBO CAMPUS PHARMACY, a New
Mexico Corporation, and PRINCIPAL LIFE
INSURANCE COMPANY, a foreign
corporation,

       Defendants.

## MEMORANDUM OPINION AND ORDER

       This matter is before the Court on Defendant Principal Life Insurance Company's Motion for Summary Judgment (Doc. No. 63); Defendant Lobo Pharmacy Inc.'s Motion for Summary Judgment and Memorandum in Support Thereof (Doc. No. 81); Plaintiff's Motion to Strike Defendant Principal's Reply in Support of its Motion for Summary Judgment (Doc. No. 72); and Plaintiff's Motion for Default Judgment against Lobo Campus Pharmacy, Inc. (Doc. No. 88). The Court, having considered the pleadings submitted by the parties, the applicable law, and otherwise being fully advised, finds that Defendant Principal's and Defendant Lobo's motions for summary judgment should be granted in part. The Court will grant Defendant Principal's motion for summary judgment as to Plaintiff's claims for prima facie tort and punitive damages. The Court will also grant Defendant Lobo's motion for summary judgment on Plaintiff's claims for fraudulent misrepresentation, intentional infliction of emotional distress, and punitive damages. The Court, however, reserves ruling on both Defendant Principal's and Defendant Lobo's motions for summary judgment as to Count I, Plaintiff's denial of benefits claim under ERISA,

and as to Plaintiff's equitable estoppel claim.  The Court finds that the parties must submit additional briefing before it will resolve the remaining claims.  The Court also concludes that Plaintiff's motion to strike should be denied and that Plaintiff's motion for default judgment should be denied as moot.

## I.  BACKGROUND

### A.  Factual History

The following facts are either undisputed or are facts, established by admissible evidence, that most favor Plaintiff Yvonne Vigil (hereinafter "Plaintiff").

Daniel Hernandez was the owner and president of Defendant Lobo Campus Pharmacy, Inc., (hereinafter "Lobo") from approximately April 1990 through December 31, 2003.  Def. Lobo's Mot. for Summ. J. and Mem. in Supp. Thereof (Doc. No. 81) ("Lobo's Mot. for Summ. J."), Ex. 1 at 1.  On or near November 15, 2000, Defendant Principal Life Insurance Company (hereinafter "Principal") issued a group health insurance policy (hereinafter "the Plan"), policy number GME P18714, to Lobo.  Principal's Mot. for Summ. J. (Doc. No. 63), Undisputed Fact 1.  The Plan was renewed thereafter on an annual basis.  *Id.*  The Plan was last renewed on November 15, 2003.  *Id.*

Plaintiff was a full-time employee of Lobo until December 31, 2003.  *Id.*, Undisputed Fact 5; *Id.*, Ex. 5 at 21-22.  Plaintiff participated in Lobo's group health insurance plan through Principal.  Pl.'s Resp. Opposing Principal's Mot. for Summ. J. (Doc. No. 66) ("Pl.'s Resp. to Principal"), Ex. 1 at 22.  For each pay period, Lobo deducted the health insurance premium from the pay of Plaintiff and paid the premium to Principal.  *Id.*, Ex. 2 at 52.

Plaintiff was originally scheduled to have surgery in early to mid-December 2003.  *See*

Pl.'s Resp. to Principal, Ex. 1 at 32-33.  Sometime in early to mid-December, however, Daniel

Hernandez notified Plaintiff that he was going to sell Lobo.  *See id.*, Ex. 1 at 24.  Mr. Hernandez

requested that Plaintiff put off her surgery until after he closed the Lobo store because he needed

her help at the store prior to closing.  *See id.*, Ex. 1 at 33, 63-65.  Mr. Hernandez told Plaintiff

that, despite the closure of Lobo, the costs of Plaintiff's rescheduled surgery would still be

covered.  *See id.*, Ex. 1 at 27-31.  At that time, Mr. Hernandez himself did not know whether

insurance coverage would be terminated on December 31, 2003, as he hoped that they would be

granted a 30-day grace period for coverage, based on the premium payment he intended to make.

*See id.*, Ex. 2 at 19.  Although Plaintiff understood that the group policy that Principal issued to

Lobo was going to end on December 31, 2003, Plaintiff believed, based on Mr. Hernandez's

statements to her, that she would still have insurance coverage.  *See id.*, Ex. 1 at 27-31.  Plaintiff

thus rescheduled her surgery with her treating physician, Dr. Frances Fisk, for January 20, 2004.

*See id.*, Ex. 1 at 33, Ex. 5, & Ex. 9 at 2.[1]

---

[1]Plaintiff offers contradictory testimony as to when she scheduled her January 20, 2004 surgery.  Early in her deposition testimony, Plaintiff stated that Mr. Hernandez told her in early to mid-December that he was selling his business and asked her to reschedule her surgery to help him close the store.  Pl.'s Resp. to Principal, Ex. 1 at 33.  Plaintiff then said that, based on this conversation, she rescheduled her surgery for January 20, 2004.  *See id.*, Ex. 1 at 33-34.  Later in her testimony, however, defense counsel showed Plaintiff a copy of a letter dated November 10, 2003, from Dr. Fisk's office to Plaintiff showing that her surgery was already scheduled for January 20, 2004.  *See id.*, Ex. 1 at 65-66.  In reference to that letter, the following exchange occurred:

> Q.  But you see that, on November 10th, your surgery was already scheduled for January 20th.
> A.  Yeah, but prior to that it was scheduled for December, and then it was moved up to January.
> Q.  Okay.  But that would have to have been prior to November 10th, 2003.
> A.  I don't know.  I don't remember.  I don't know.
> Q.  So if your surgery was scheduled for December, before November 10th, 2003,

On December 8, 2003, Principal's agent, Admar Corporation, gave Dr. Fisk's office telephonic authorization for the proposed January 20, 2004 surgery. *Id.*, Ex. 9 at 2. Several days later, Dr. Fisk's office received Admar Corporation's written authorization for Plaintiff's surgery in the mail. *Id.* The written authorization also contained the following disclaimer: "This determination does not guarantee payment of benefits. All procedure and services will be subject to the applicable terms and provisions of the Plan at the time the services are rendered." Reply Mem. in Supp. of Def. Principal's Mot. for Summ. J. (Doc. No. 78) ("Principal's Reply"), Ex. 2 at 6.

In late December, Plaintiff spoke with one of the new owners who were buying Lobo. Exhibits to Pl.'s Am. Resp. to Def. Lobo's Mot. for Summ. J. filed Nov. 29, 2005 (Doc. No. 91) ("Pl.'s Appendix"), Ex. 3 at 39. The new owner offered Plaintiff a job, but for lower pay than her current position. *Id.*, Ex. 3 at 39-42. According to Plaintiff, the offer of employment with the

---

you had it had [sic] rescheduled.
A. Yes, it was scheduled from December to January.
Q. But that was before you had any discussions with Mr. Hernandez about closing Lobo Campus Pharmacy.
A. Yes.

*Id.*, Ex. 1 at 66. *See also* Lobo's Mot. for Summ. J., Ex. 6 (letter dated November 10, 2003 from Dr. Fisk's office to Plaintiff stating that her surgery had been scheduled for January 20, 2004). Based on this testimony, it would appear that Plaintiff had already scheduled her January 20, 2004 surgery prior to Mr. Hernandez notifying her of Lobo's impending sale, and therefore, Plaintiff did not reschedule her surgery based on Mr. Hernandez's statements to her. This Court need not, however, decide which factual scenario should be accepted as this fact is ultimately irrelevant to the Court's analysis of the legal issues. The Court has included Plaintiff's testimony as to rescheduling her surgery in early to mid-December based on Mr. Hernandez's request and has discussed Plaintiff's contradictory testimony in order to give context to the relevant facts. The Court notes, however, that Plaintiff does not offer contradictory testimony about the following: that Mr. Hernandez told Plaintiff that, despite Lobo's closure, she would still have insurance coverage for her January 20, 2004 surgery, and that both Mr. Hernandez and Plaintiff believed at the time of his statement that paying the insurance premium would extend insurance coverage.

4

new owners did not include health benefits.  *Id.*  Plaintiff rejected the offer because she did not want to work for lower pay.  *Id.*, Ex. 3 at 41.

On December 28, 2003, Principal issued a billing statement to Lobo in the amount of $2,172.84 for the billing period January 15, 2004, to February 14, 2004.  Pl.'s Resp. to Principal, Ex. 13.  On December 31, 2003, Lobo deducted the last premium from Plaintiff's paycheck.  *Id.*, Ex. 2 at 52. After making this deduction, Lobo wrote and sent a check in the amount of $1,725.14 to Principal on December 31, 2003.  *Id.*, Ex. 2 at 57 & Ex. 4.  Mr. Hernandez believed that the last premium payment made to Principal was for insurance coverage from January 15 through February 14, 2004.  *Id.*, Ex. 2 at 55-56.  Plaintiff also believed that her last premium payment provided insurance coverage for January 2004.  *See id.*, Ex. 1 at 52.  No one at Principal, however, ever told Mr. Hernandez that if he sent in an additional premium for the period after December 31, 2003, that the premium payment would continue coverage under the Plan.  Principal's Reply, Ex. 4 at 23-24.  Moreover, Plaintiff never personally contacted Principal regarding coverage for her January 20, 2004 surgery.  *See* Lobo's Mot. for Summ. J., Ex. 5 at 38-39.

On December 31, 2003, Daniel Hernandez sold Lobo to Plaza Drugs, Inc.  *Id.*, Ex. 1 at 2; *see also* Pl.'s Am. Resp. to Def. Lobo's Mot. for Summ. J. and Mem. in Supp. Thereof (Doc. No. 89) ("Pl.'s Am. Resp. to Lobo") at Undisputed Fact H, Q, R, & T; Reply Mem. in Supp. of Def. Lobo's Mot. for Summ. J. (Doc. No. 96) ("Lobo's Reply"), Ex. 3 at 1.  On that same day, Plaintiff's employment with Lobo ended due to the closure of the Lobo business.  Principal's Mot. for Summ. J., Undisputed Fact 5; *Id.*, Ex. 5 at 21-22.  In addition, on December 31, 2003, Mr. Hernandez called Principal and spoke to Carol Shuda.  *Id.*, Ex. 2 at 20-21.  Mr. Hernandez

notified Principal for the first time that he was selling the business and terminating the Plan as of

that day, December 31, 2003.  *Id.*  During that conversation, Mr. Hernandez also asked Principal

if there was a COBRA[2] plan or any other individual insurance plan available to cover himself, his

family, and Plaintiff.  *Id.*  Principal informed Mr. Hernandez that he did not qualify for COBRA

because Lobo did not have the proper amount of employees and that there was no other insurance

available to him or his former employees.  *Id.*

On January 1, 2004, Mr. Hernandez wrote Principal a letter stating, "Effective December

31, 2003 Lobo Campus Pharmacy was sold to a private individual.  This letter will serve notice

that our group policy will terminate as per our contract."  Pl.'s Resp. to Principal, Ex. 11.  The

letter also asked for information about whether Principal offered COBRA or other individual

family plans.  *Id.*  Mr. Hernandez never notified Plaintiff that he canceled the Plan.  *Id.*, Ex. 2 at

59, 65, 74.

On or around January 12, 2004, Plaintiff called Mr. Hernandez and inquired of him

whether she still had insurance coverage.  Pl.'s Appendix, Ex. 4 at 33-34.  Mr. Hernandez told

Plaintiff that the check had been cashed and that he assumed there was coverage in place.  *Id.*, Ex.

4 at 34.

On January 20, 2004, Plaintiff underwent the surgical procedure.  Principal's Mot. for

Summ. J., Undisputed Fact 6.  On January 21, 2004, Admar Corporation issued Dr. Fisk another

written authorization for the surgical procedure performed on Plaintiff on January 20, 2004.  Pl.'s

---

[2]COBRA stands for the Consolidated Omnibus Budget Reconciliation Act, 29 U.S.C.
§§ 1161-68, which is an amendment to ERISA that authorizes a qualified beneficiary of an
employer's group health insurance plan to maintain coverage when she might otherwise lose
coverage upon the occurrence of a "qualifying event."  *See Simpson v. TD Williamson, Inc.*, 414
F.3d 1203, 1204 (10th Cir. 2005).

Resp. to Principal, Ex. 9 at 2 & Ex. 10 at 2.  This authorization contained the same disclaimer as set forth in the previous written authorization.  *See* Principal's Reply, Ex. 2 at 4.  Principal refused to pay for Plaintiff's medical expenses as a result of the surgery.  *See* Principal's Mot. for Summ. J., Ex. 5 at 43-44.  Principal told Plaintiff that it would not pay Plaintiff's surgical expenses because Lobo had canceled her insurance, effective December 31, 2003.  *Id.*, Ex. 5 at 44. Plaintiff paid the medical bills resulting from her surgery from money from her son.  *See* Pl.'s Resp. to Principal, Ex. 1 at 45-46.

By letter to Daniel Hernandez dated January 26, 2004, Principal confirmed that Lobo's group insurance plan was canceled effective midnight, December 31, 2003, per Mr. Hernandez's request.  Pl.'s Resp. to Principal, Ex. 12.  The letter also informed Lobo that it had a credit balance of $2,737.91 remaining after the cancellation date and that Principal would issue Lobo a refund.  *Id.*  Mr. Hernandez did, indeed, receive a check from Principal in the amount of $2,737.91.  *Id.*, Ex. 2 at 58.  Mr. Hernandez kept the entire amount in the Lobo corporate account.  *Id.*, Ex. 2 at 58-59.

In her deposition, Plaintiff testified that, even if she had found out prior to her surgery that she did not have insurance coverage, Plaintiff would still have gone ahead with the surgery because she needed it.  Lobo's Mot. for Summ. J., Ex. 5 at 75.

**B.    Procedural History**

On May 13, 2004, Plaintiff filed a "Complaint for Damages Arising from Breach of Contract, Prima Facie Tort, and Punitive Damages" (hereinafter "Complaint") in the State of New Mexico's Second Judicial District Court against Defendants Lobo and Principal.  Plaintiff's Complaint contained three counts:  (1) breach of contract, (2) prima facie tort, and (3) punitive

7

damages.  On July 29, 2004, Defendant Principal removed the case to this Court, alleging that the case arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, *et seq.* (hereinafter "ERISA").  On August 5, 2004, Principal filed its Answer.  (Doc. No. 3).  On August 12, 2004, Plaintiff moved to remand the case to state court, arguing that her claims did not arise under ERISA because her health insurance plan was not "established or maintained" by Defendant Lobo.  (Doc. No. 5).

In a Memorandum Opinion and Order filed on December 8, 2004, this Court denied Plaintiff's motion to remand.  (Doc. No. 23).  In denying Plaintiff's motion to remand, this Court concluded that the benefits at issue in this case met the definition of an employee welfare benefits plan and were governed by ERISA; that Plaintiff's claim in Count I fell within the scope of ERISA's civil enforcement provisions; and that ERISA preempted Plaintiff's state law claim in Count I.  Mem. Op. and Order (Doc. No. 23) at 5-7.  The Court therefore converted Plaintiff's claim in Count I to an ERISA claim for benefits due according to the terms of the plan under 29 U.S.C. § 1132(a)(1)(B) and exercised supplemental jurisdiction over Counts II and III.  *Id.*

On March 7, 2005, Defendant Lobo filed a motion to dismiss Plaintiff's claims in Counts I and II on the ground that each failed to state a claim upon which relief can be granted.  (Doc. No. 34).  Plaintiff filed a response opposing Lobo's motion to dismiss.  (Doc. No. 38).  After arguing the merits of her claims, Plaintiff stated:  "However, in case there is a defect in the pleadings, which Plaintiff Vigil denies, it is curable.  Plaintiff Vigil has prepared a proposed First Amended Complaint, a copy of which is attached hereto as *Exhibit 1*."  Pl.'s Resp. to Def. Lobo's Mot. to Dismiss at 11.  Plaintiff's proposed first amended complaint added claims for fraudulent misrepresentation, detrimental reliance, and intentional infliction of emotional distress.  *Id.*, Ex. 1

8

at 13-15.  Although Plaintiff attached a proposed first amended complaint, Plaintiff never clearly and expressly moved the Court to amend the complaint.  The Court denied Lobo's motion to dismiss Plaintiff's denial of benefits claim in Count I and granted its motion to dismiss Plaintiff's prima facie tort claim in Count II.  Mem. Op. and Order (Doc. No. 48), filed June 3, 2005.  The Court, however, never discussed Plaintiff's proposed amended complaint.

On September 12, 2005, Principal filed a Motion for Summary Judgment.  (Doc. No. 63). On September 26, 2005, Plaintiff filed a Motion for Extension to File Response Brief in which Plaintiff requested a one-day extension.  (Doc. No. 65).  The next day Plaintiff filed her response (Doc. No. 66) opposing Principal's Motion for Summary Judgment.  The Court granted Plaintiff's request for an extension of time.  (Doc. No. 67).  On October 7, 2005, Principal filed a "Motion for Extension of Time to File Reply and to Take Depositions of Two Newly-Disclosed Witnesses [sic]," in which Principal requested that the Court allow it an extension through November 4, 2005, to file its reply in order to allow Principal to interview and/or depose the two lay witnesses allegedly disclosed to Principal for the first time in Plaintiff's response.  (Doc. No. 68).  Plaintiff filed a response opposing Principal's request for an extension (Doc. No. 76), and on October 14, 2005, Plaintiff filed a "Motion to Strike Defendant Principal's Reply in Support of its Motion for Summary Judgment."  (Doc. No. 72).  On October 21, 2005, the Honorable Richard L. Puglisi granted Principal's motion to extend its time to file its reply until November 4, 2005.  (Doc. No. 75).  Thereafter, on November 4, 2005, Principal filed its reply in support of its motion for summary judgment.  (Doc. No. 78).

On November 14, 2005, Defendant Lobo filed a "Motion for Summary Judgment and Memorandum in Support Thereof" (Doc. No. 81).  Plaintiff then filed a response (Doc. No. 87)

9

as well as an amended response (Doc. No. 89) that corrected typographical errors and errors in numbering exhibits in her original response.  Plaintiff filed an appendix of exhibits separately (Doc. No. 91).  On December 16, 2005, Lobo filed a reply in support of its motion (Doc. No. 96).

On November 29, 2005, Plaintiff filed a motion for default judgment against Lobo based on the fact that Lobo never filed an answer to Plaintiff's Complaint.  (Doc. No. 88).  On December 15, 2005, Lobo filed, for the first time, its answer (Doc. No. 94) and a response (Doc. No. 95) to inform the Court that Plaintiff would be withdrawing her motion for default judgment and filing a notice of withdrawal no later than December 16, 2005.  Attached to the response was a letter dated December 9, 2005, from Plaintiff's counsel to counsel for Lobo stating, "Pursuant to your request of December 8, 2005, I am withdrawing the Motion for Default Judgment, filed November 29, 2005, docket number 88."  Def. Lobo's Resp. to Pl.'s Mot. for Default J. against Lobo (Doc. No. 95), Ex. A.

The Court held a motion hearing on June 7, 2006.  In that hearing, the parties agreed to provide the Court with a certified copy of the complete policy, because certain relevant provisions of the policy were absent in the record.  On June 19, 2006, Principal submitted a copy of the group policy in effect prior to December 31, 2003, bates-labeled PLVIGIL 0001-0144, and a declaration of Kimberly H. Johnson who attests that the attached policy was the policy in effect as of December 31, 2003.  On June 23, 2006, Plaintiff submitted a letter with portions of Principal's Rule 26(a) Disclosures and the "Group Booklet", bates labeled PLVIGIL 0145-0278.  In the letter, Plaintiff stated that she was attaching "a copy of the insurance policy that Principal appended to its Rule 26(a) disclosures . . . which policy is entirely different than the policy"

10

submitted to the Court by Principal.  Principal's Rule 26(a) Disclosures, however, reveal that

Principal provided the group policy, bates-labeled PLVIGIL 0001-0144, as well as the group

policy booklet, bates-labeled PLVIGIL 0145-0278.  The group booklet provided by Plaintiff

states:  "Member rights and benefits are determined by the provisions of the Group Policy.  This

booklet briefly describes those rights and benefits."  PLVIGIL 0149.

## II.     LEGAL STANDARD

Summary judgment is appropriate only if "'the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law.'"  *Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527

(10th Cir. 1995) (quoting Fed. R. Civ. P. 56(c)).   "All facts and reasonable inferences must be

construed in the light most favorable to the nonmoving party."  *Id.* (internal quotations omitted).

Under Rule 56(c), the mere existence of some alleged factual dispute between the parties will not

defeat an otherwise properly supported motion for summary judgment.  *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  Rather, only disputes of facts that might affect the

outcome of the case will properly preclude the entry of summary judgment.  *Id.* at 248.

Initially, the moving party bears the burden of showing that no genuine issue of material

fact exists.  *Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993).  Once the

moving party meets its burden, the nonmoving party must show that genuine issues remain for

trial.  *Id.*  The nonmoving party must go beyond the pleadings and by its own affidavits, or by the

depositions, answers to interrogatories, and admissions on file, designate specific facts showing

that there is a genuine issue for trial.  *See id.*; *Kaus v. Standard Ins. Co.*, 985 F.Supp. 1277, 1281

(D. Kan. 1997) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).  There is no issue for

trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict

for that party.  *See Anderson*, 477 U.S. at 248.  The Court will consider Defendants' motions in

light of these standards.

## III.   DISCUSSION

### A.   Plaintiff's Motion to Strike Principal's Reply

As an initial matter, this Court must address Plaintiff's motion to strike Principal's reply

brief.  The Honorable Richard L. Puglisi found good reason to grant Principal's request for an

extension of time to file its reply until November 4, 2005.  Principal then complied with this

extended deadline, filing its reply brief on November 4, 2005.  Because Principal's reply brief was

timely filed in accordance with Judge Puglisi's Order, this Court denies Plaintiff's motion to strike

Principal's reply and will consider the arguments and evidence set forth in that brief.

### B.   Plaintiff's Motion for Default Judgment against Lobo

Based on the representations by Lobo and the letter attached as Exhibit A to Lobo's

response to Plaintiff's motion for default judgment, it appears that Plaintiff is not pursuing her

motion for default judgment.  The Court therefore finds that Plaintiff's motion for default

judgment should be denied as moot.

### C.   Clarification of Claims in Complaint

In her briefs opposing Defendants' motions for summary judgment, Plaintiff repeatedly

states that her complaint alleges more than merely claims for breach of contract, prima facie tort,

and punitive damages.  Rather, Plaintiff asserts that her complaint also alleges claims for

fraudulent misrepresentation, detrimental reliance, promissory estoppel, and intentional infliction

of emotional distress.  *See, e.g.,* Pl.'s Resp. to Principal at 15; Pl.'s Resp. to Lobo at 3.  Plaintiff never addresses where in her complaint these claims are raised or upon which complaint she is relying.  This Court has analyzed the original Complaint attached to the Notice of Removal and finds that Plaintiff did not allege therein a claim for fraudulent misrepresentation, detrimental reliance, promissory estoppel, or intentional infliction of emotional distress.  The Court finds that the terms of Plaintiff's original Complaint can only be reasonably construed under Fed. R. Civ. P. 8(a)'s liberal pleading standard as alleging claims for breach of contract, prima facie tort, and punitive damages.

Nevertheless, on March 22, 2005, Plaintiff attached as an exhibit to her response to Lobo's motion to dismiss a proposed first amended complaint alleging, in addition to the claims in the original Complaint, claims for fraudulent misrepresentation, detrimental reliance, and intentional infliction of emotional distress.  The Court, however, in its Memorandum Opinion and Order denying Lobo's motion to dismiss never addressed Plaintiff's proposed first amended complaint.  In order to clarify the claims currently at issue in this case, the Court determines that it must now address Plaintiff's proposed first amended complaint to determine whether she has properly amended her complaint to allege claims for fraudulent misrepresentation, detrimental reliance, promissory estoppel, and/or intentional infliction of emotional distress.

### 1.    Amendment of Complaint

Fed. R. Civ. P. 15 governs amendments to pleadings.  Rule 15 provides:

> A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served. . . . Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

Fed. R. Civ. P. 15(a).  Neither a motion to dismiss nor a motion for summary judgment is a responsive pleading.  *See Brever v. Rockwell Int'l Corp.*, 40 F.3d 1119, 1131 (10th Cir. 1994) (citing *Zaidi v. Ehrlich*, 732 F.2d 1218, 1219-20 (5th Cir. 1984); *Glenn v. First Nat'l Bank*, 868 F.2d 368, 370 (10th Cir. 1991)).  Where there are multiple defendants and only one of the defendants has answered, the plaintiff has the right to amend only the claims asserted against the non-answering defendant and must obtain leave to amend as to the answering defendants.  3 Moore's Federal Practice, § 15.11 (Matthew Bender 3d ed.) (and cases cited therein).  When a plaintiff files a proper motion to amend, leave to amend should be freely given, reflecting the policy that claims should be heard on their merits.  *Calderon v. Kansas Dep't of Social & Rehab. Servs.*, 181 F.3d 1180, 1186 (10th Cir. 1999).  Nevertheless, this policy must be balanced against Fed. R. Civ. P. 7(b)(1), which requires that any motion "shall be made in writing, shall state with particularity the grounds therefor, and shall set forth the relief or order sought."  *Id.* (quoting Fed. R. Civ. P. 7(b)(1)).  Although a failure to file a formal motion to amend is not always fatal, "a request for leave to amend must give adequate notice to the district court and to the opposing party of the basis of the proposed amendment before the court is required to recognize that a motion for leave to amend is before it."  *Id.* at 1186-87.

In this case, Plaintiff never filed a formal motion requesting leave to amend her Complaint. Instead, in her response to Lobo's motion to dismiss, Plaintiff attached a proposed first amended complaint and stated that she did so "in case there is a defect in the pleadings."  Pl.'s Resp. to Def. Lobo's Mot. to Dismiss (Doc. No. 38) at 11.  At the time Plaintiff attached her proposed amended complaint, Lobo had not yet filed a responsive pleading but Principal had.  Accordingly, as to Lobo, Plaintiff had a right to amend her complaint without leave from the Court, but as to

14

Principal, Plaintiff had to have leave of Court in order to amend her pleading. Although Plaintiff's statement in her response was somewhat ambiguous concerning whether she was moving to amend her complaint, the Court nevertheless finds that Plaintiff's attachment of the first amended complaint to her response was sufficient to provide notice to Defendants and the Court of Plaintiff's desire to amend her complaint. Plaintiff therefore amended her complaint as a matter of right as to Defendant Lobo.

As to Defendant Principal, however, Plaintiff was required to request leave to amend her Complaint. Whether Plaintiff's response can be considered a proper motion for leave to amend is a close question. Although Plaintiff's statement in her response was somewhat ambiguous and Plaintiff did not explain with particularity the grounds for allowing an amendment, Plaintiff did attach a proposed first amended complaint stating and describing the additional causes of action she wished to plead. The Court finds that Plaintiff's actions sufficiently constituted a motion for leave to amend her complaint as to Defendant Principal. The Court must therefore decide whether leave to amend her complaint as to Principal should be granted.

Leave to amend a complaint should be freely given in the absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962). In this case, leave to amend the Complaint should be denied as to all Plaintiff's claims, except her equitable estoppel claim, based on futility of amendment, as Plaintiff's proposed state law claims are preempted by ERISA.

### 2.    ERISA Preemption

ERISA's preemption sections consist of three clauses: the preemption clause, 29 U.S.C.

§ 1144(a); the savings clause, 29 U.S.C. § 1144(b)(2)(A); and the deemer clause, 29 U.S.C.

§ 1144(b)(2)(B).  The preemption clause of ERISA broadly preempts all laws that "relate to" an

ERISA plan:  "Except as provided in subsection (b) of this section [the saving clause], the

provisions of this subchapter and subchapter III of this chapter shall supersede any and all State

laws insofar as they may now or hereafter relate to any employee benefit plan."  29 U.S.C.

§ 1144(a).  The savings clause limits the preemption clause's application by exempting laws

relating to insurance, banking, or securities from the preemption clause's broad sweep.  *See* 29

U.S.C. § 1144(b)(2)(A).  The deemer clause, in turn, creates an exception to the saving clause's

exception by stating that an ERISA plan may not be "deemed" to be an insurance, banking, or

securities company.  *See* 29 U.S.C. § 1144(b)(2)(B).

The Tenth Circuit broadly construes ERISA preemption.  *Straub v. Western Union*

*Telegraph Co.*, 851 F.2d 1262, 1263-64 (10th Cir. 1988).  A law "relates to" an employee benefit

plan "if it has a connection with or reference to such a plan."  *Id.* at 1264 (quoting *Shaw v. Delta*

*Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983)).  In *Straub*, the plaintiff brought a breach of contract

claim and negligent misrepresentation claim based on the defendant's failure to inform him that his

pension benefits might be affected by his transfer of employment to a subsidiary company.  *Id.* at

1263.  The Tenth Circuit held that both the plaintiff's state law claims were preempted by ERISA.

*Id.* at 1264.

Plaintiff's proposed amended complaint seeks to add claims for fraudulent

misrepresentation (Count III) and intentional infliction of emotional distress (Count IV) against

Defendant Principal.  The Court finds that Plaintiff's fraudulent misrepresentation claim "relates

to" the Plan, as the factual basis for the claim involves the Plan.  *Settles v. Golden Rule Ins. Co.*,

927 F.2d 505, 509 (10th Cir. 1991) (common law torts preempted by ERISA if factual basis of

claims involve employee benefit plan).  Because the savings clause does not apply, ERISA

therefore preempts Plaintiff's fraudulent misrepresentation claim.  *See Pilot Life Ins. Co. v.*

*Dedeaux*, 481 U.S. 41, 44-48 (1987) (state law claims for tortious breach of contract, breach of

fiduciary duties, and fraud in the inducement preempted by ERISA); *Kelso v. General American*

*Life Ins. Co.*, 967 F.2d 388, 390-91 (10th Cir. 1992) (misrepresentation claims based on

plaintiff's belief she was insured because of insurer's acceptance of payment of premiums from

plaintiff's employer on plaintiff's behalf preempted by ERISA); *Straub*, 851 F.2d at 1264

(negligent misrepresentation claim preempted by ERISA); *Johnson v. District 2 Marine*

*Engineers Beneficial Ass'n*, 857 F.2d 514, 517-18 (9th Cir. 1988) (state law claim for fraud

preempted by ERISA); *Van Hoove v. Mid-America Bldg. Maintenance, Inc.*, 811 F.Supp. 609,

610-11 (D. Kan. 1993) (state law claim for misrepresentation based on employer's affirmatively

misrepresenting insured status through end of month preempted by ERISA).

Numerous courts have also concluded that state law claims for intentional infliction of

emotional distress are preempted.  *See Stiltner v. Beretta U.S.A. Corp.*, 74 F.3d 1473, 1480-81

(4th Cir. 1996) (intentional infliction of emotional distress claim based on allegedly wrongful

denial or termination of benefits under an ERISA plan is preempted by ERISA); *Kuhl v. Lincoln*

*Nat. Health Plan of Kansas City, Inc.*, 999 F.2d 298, 304 (8th Cir. 1993) (emotional distress

claim preempted by ERISA); *Settles*, 927 F.2d at 507-09 (ERISA preempted state law claim for

tort of outrage and wrongful death based on assertion that employee's heart attack was caused by

emotional distress as a result of insurer's termination of coverage under policy); *Johnson*, 857

F.2d at 517-18 (state law intentional infliction of emotional distress claim preempted by ERISA).

*Clark v. Humana Kansas City, Inc.*, 975 F.Supp. 1283, 1286-87 (D. Kan. 1997) (emotional distress claim under tort of outrage preempted by ERISA).  Count IV of Plaintiff's proposed amended complaint re-alleges paragraphs 1 through 47 of the complaint, in which Plaintiff asserts that Defendants wrongfully terminated her insurance contract.  *See* Pl.'s Resp. to Def. Lobo's Mot. to Dismiss, Ex. 1 at 15.  As in the above-cited cases, Plaintiff's intentional infliction of emotional distress claim stems directly from Defendants' failure to pay benefits to Plaintiff, requiring a determination that Defendants wrongfully terminated her insurance coverage.  This claim thus relates to an employee benefit plan and is preempted.

Finally, Plaintiff also contends that she has claims for promissory estoppel and a claim for continuation or conversion coverage under NMSA § 59A-18-16.  Pl.'s Resp. to Principal at 15-16 (contending that Plaintiff "was improperly denied the right to a continuation of coverage or conversion under the contract, pursuant to NMSA § 59A-18-16, upon sale of Lobo and termination of her employment as of December 31, 2003"); Pl.'s Resp. to Lobo at 3 ("Plaintiff filed against Lobo for state claims of promissory estoppel. . . .").  Despite Plaintiff's assertions, however, Plaintiff has not alleged a claim for continuation or conversion coverage under NMSA § 59A-18-16 in either her original complaint or her proposed first amended complaint.  Nowhere in Plaintiff's complaints does she even cite NMSA § 59A-18-16.  Even under Rule 8(a)'s liberal pleading standard, the Court cannot construe Plaintiff's proposed amended complaint as stating a cause of action for continuation or conversion under NMSA § 59A-18-16, and thus, the Court does not grant Plaintiff leave to amend her complaint to include a cause of action under NMSA

18

§ 59A-18-16.[3]

As to Plaintiff's promissory estoppel claim, the Court finds that Plaintiff sufficiently alleged a cause of action for equitable estoppel under Rule 8(a)'s liberal pleading standard against Defendants Principal and Lobo.  The proposed amended complaint specifically alleges that "Defendant Lobo promised Plaintiff Vigil on numerous occasions not to worry about the insurance premiums as it would be taken care after her employment ceased.  Pl.'s Resp. to Lobo's Mot. to Dismiss, Ex. 1 (First Amended Complaint) at 4.  Plaintiff also alleges that Defendant Lobo represented to her that the insurance premiums would be paid, that her surgery would be taken care of, and that she need not worry about the medical bills.  *Id.*, Ex. 1 at 14.  Plaintiff also alleges that she detrimentally relied on Defendant Lobo's promises and asks for damages flowing from both Defendant Lobo and Defendant Principal's representations.  *See id.*, Ex. 1 at 14-15.

Unlike Plaintiff's other state law claims, the Court cannot find at this juncture that amending the complaint to add an equitable estoppel claim would be futile.  Although state law promissory estoppel claims based on an oral modification to an ERISA plan are preempted under ERISA, *see Peckham*, 964 F.2d at 1050, the Tenth Circuit has indicated that it may recognize equitable estoppel claims based on federal common law if the terms of the Plan are ambiguous and where an employee relies to her detriment on an interpretation of an ambiguous provision in a plan by a representative of that plan.  *See Averhart v. US West Management Pension Plan*, 46 F.3d 1480, 1485-86 (10th Cir. 1994) (neither adopting nor rejecting equitable estoppel claim); *Peckham*, 964 F.2d at 1050, n.13; *Kane v. Aetna Life Ins. Co.*, 893 F.2d 1283, 1285-86 (11th

---

[3]The Court likewise concludes that Plaintiff's amended complaint does not include a cause of action for continuation or conversion under NMSA § 59A-18-16 against Defendant Lobo.

Cir. 1990) (applying federal common law of equitable estoppel where policy provision ambiguous and oral representation interpreted ambiguity).  The Court therefore grants Plaintiff leave to amend her complaint against Principal to include a claim for equitable estoppel based on federal common law.

In sum, amendment of Plaintiff's Complaint to include claims for fraudulent misrepresentation and intentional infliction of emotional distress against Principal would be futile, and thus, the Court denies leave to amend Plaintiff's Complaint to include such claims against Defendant Principal.  The Court nevertheless grants Plaintiff leave to amend her Complaint to include a claim for equitable estoppel based on federal common law.  The following claims therefore remain against Defendant Principal:  (1) failure to pay benefits under the terms of the Plan under 29 U.S.C. § 1132(a)(1)(B); (2) equitable estoppel based on federal common law; (3) prima facie tort; and (4) punitive damages.  Because Plaintiff could amend her Complaint as a matter of right against Defendant Lobo, Plaintiff has the following claims against Defendant Lobo:  (1) failure to pay benefits under the terms of the Plan under 29 U.S.C. § 1132(a)(1)(B); (2) fraudulent misrepresentation; (3) equitable estoppel based on federal common law; (4) intentional infliction of emotional distress; and (5) punitive damages.  The Court will now address each defendant's motion for summary judgment as to the claims that remain against them.

### D.    Principal's Motion for Summary Judgment

#### 1.    Count I: ERISA

In its Memorandum Opinion and Order denying Plaintiff's first motion to remand, this Court determined that Count I of Plaintiff's Complaint was preempted by ERISA, and thus this Court converted Count I to a claim for benefits due under the terms of the Plan under 29 U.S.C.

§ 1132(a)(1)(B).  *See* Mem. Op. and Order (Doc. No. 23) at 5-7.[4]  After reviewing the parties'

briefs and the applicable law, the Court has determined that it needs additional briefing on issues

relating to the standard of review and the policy provisions governing when the group policy

terminated before it can rule on Principal's motion for summary judgment on Plaintiff's claim for

benefits under § 1132(a)(1)(B).

a.    Standard of Review

A denial of benefits claim must be reviewed under a de novo standard unless the benefit

plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits

or to construe the terms of the plan.  *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115

(1989).  Where the plan gives the administrator discretionary authority to interpret the terms of

the Plan, the Court must apply the arbitrary and capricious standard.  *Allison v. Unum Life Ins.*

*Co. of America*, 381 F.3d 1015, 1021 (10th Cir. 2004).   Under the arbitrary and capricious

standard, the court must uphold the decision unless it is not grounded on any reasonable basis.

*Kimber v. Thiokol*, 196 F.3d 1092, 1098 (10th Cir. 1999).  The plan administrator's interpretation

of an ambiguous plan provision should be judged as follows:  (a) as a result of reasoned and

principled process, (b) consistent with any prior interpretations by the plan administrator, (c)

reasonable in light of any external standards, and (d) consistent with the purposes of the plan.

*Fought v. Unum Life Ins. Co. of America*, 379 F.3d 997, 1003 (10th Cir. 2004).  "When a plan

administrator is given authority to interpret the plan language, and more than one interpretation is

rational, the administrator can choose any rational alternative."  *Kimber*, 196 F.3d at 1100.

---

[4]This Court reaffirmed that ruling by denying Plaintiff's second motion to remand in a
Memorandum Opinion and Order filed on May 19, 2006 (Doc. No. 99).

21

Where an administrator is acting under a conflict of interest, however, the court must apply a "sliding scale" approach in which the court decreases the level of deference given to the decision in proportion to the seriousness of the conflict. *See Fought*, 379 F.3d at 1003-04. When the decision-maker is both the insurer and plan administrator, an inherent conflict of interest exists, requiring that the plan administrator bear the burden of proving the reasonableness of its decision under the traditional arbitrary and capricious standard. *See id.* A court must take a hard look at the evidence and arguments presented to the plan administrator to ensure that the decision was a reasoned application of the terms of the plan to the particular case, untainted by the conflict of interest. *Id.* at 1006.

The parties have not addressed the standard of review that should apply in this case. In light of the importance of this issue, the Court would like the parties to submit briefs on the following issues. First, the parties must address what the appropriate standard of review is for the Court in reviewing Principal's decision to deny benefits. In discussing this issue, the parties must address the relevance of Part II, Section A, Article 12 of the Plan (PLVIGIL 0026). The parties must also discuss whether a conflict of interest exists and, if so, how it affects the standard of review. Second, the parties must clarify what evidence forms the administrative record in this case, *i.e.*, what evidence and arguments were presented to the plan administrator when it made its determination to deny benefits. The parties should not add any evidence to their briefs, but merely explain what evidence already before the Court the plan administrator used in making its decision.

### b.       Denial of Benefits

Principal argues that Plaintiff's claim for benefits under the terms of the Plan fails as a

22

matter of law because it is undisputed that on December 31, 2003, Lobo sold its pharmacy to another entity and directed Principal to cancel the group policy effective that day due to the sale. Because Plaintiff's surgery occurred on January 20, 2004, after Lobo directed Principal to terminate the group Plan, Principal asserts that Plaintiff cannot demonstrate that she is entitled to benefits under the Plan.

Section C of the plan, entitled "Individual Terminations," provides in Article 1:  "Unless continued as provided in Section D - Continuation, a Member's coverage under this Group Policy will terminate on the earliest of:

a. the date this Group Policy is terminated; or

b. the date the last premium is paid for the Member's Insurance; . . . ."

Plan at PLVIGIL 0042.[5]  Article 1 then sets forth five additional events that terminate coverage, which are not relevant here.  *See id.*  Plaintiff argues that there is a fact question as to when the date the last premium was paid for insurance, contending that her premium payment continued coverage through February 14, 2004.  According to the Plan terms of this section, however, the group Plan terminates "on the earliest of" the seven events described.  Thus, if the group policy

---

[5]The Court finds that the group policy bates-labeled PLVIGIL 0001-0144 is the relevant group policy.  Plaintiff is mistaken in referring to the group policy booklet, bates-labeled PLVIGIL 0145-0278, as the group policy.  As the group policy booklet itself states, the booklet merely describes the rights and benefits that are determined by the provisions of the group policy. *See* PLVIGIL 0149.  Moreover, Principal attached to its motion for summary judgment portions of its GME P18714 group insurance policy issued to Lobo.  Principal's Mot. for Summ. J., Ex. 1. The sections provided in the briefs are identical to the sections provided in the complete group policy subsequently submitted by Principal following the Court's request.  Plaintiff did not dispute in her briefs that the sections of the policy provided by Principal were the sections of the policy in place that governed Plaintiff's benefits for the time period in question.  In fact, Plaintiff herself relied on portions of the same policy provided by Principal in her briefs. *See* Pl.'s Resp. to Principal at 5, 21-23.  Accordingly, this Court finds that the policy submitted by Principal on June 19, 2006, is the relevant Plan and all references to the terms of the Plan are to that policy.

23

terminated prior to the date the last premium was paid for insurance, then Plaintiff's coverage

terminated on the earlier date.  The Court must therefore first determine on what date the group

policy terminated in order to determine whether Plaintiff had coverage.

Moreover, determining when the group policy terminated is also relevant to whether

Plaintiff was entitled to a continuation of coverage under the policy.  Section C creates an

exception to termination of coverage where coverage has been continued in Section D.  Section D

provides continued coverage for employees who cease to be actively employed due to sickness,

injury, layoff, or approved leave of absence.  This continued coverage, however, is discontinued

"the date insurance would otherwise cease as provided in this PART III, Section C."  Principal's

Mot. for Summ. J., Ex. 1 at PLVIGIL 0044.  The termination of the group policy thus results in

termination of any continued coverage for sickness, injury, layoff, or approved leave.  Section D,

however, also provides continuation coverage required by the State of New Mexico under Article

1.c., entitled "State Required - New Mexico."  *See id.*  Under this subsection, a member may elect

to continue insurance under the group policy if insurance terminates due to termination of

employment.  *Id.*  Once again, however, this continuation coverage ceases when the group policy

terminates.  *See id.*, Ex. 1 at PLVIGIL 0044-45 ("Insurance may be continued if, on the date

insurance would otherwise cease:  this Group Policy is in force. . . Insurance for a Member who

qualifies as set forth above may be continued until the earliest of:  the date this Group Policy is

terminated.").  These terms provide that continuation coverage is not available after the group

plan terminates.

Finally, Plaintiff argues that she "was eligible to have made an individual purchase of

coverage with no medical qualification requirement under Section F(1)(a) of the policy."  Pl.'s

Resp. to Principal at 22.  Section F(1)(a) provides:  "If a Member qualifies and makes timely

application, he or she may convert the group coverage by purchasing other medical expense

insurance when insurance under this Group Policy terminates."  Principal's Mot. for Summ. J.,

Ex. 1 at PLVIGIL 0051.  This "Individual Purchase" provision, however, is subject to the

following "Purchase Qualification":

> A Member will qualify for individual purchase if insurance under this Group Policy terminates due to termination of employment or membership in the group and the Member has been continuously covered under this Group Policy . . . for at least the 3-month period immediately prior to the date insurance terminates.  Except that, a Member will not qualify for individual purchase if insurance under this Group Policy terminates because:
>
> (2)      the Group Policy terminates . . . .

*Id.*  Consequently, as in Section D, this Individual Purchase provision providing for conversion of

the group coverage is not available to a member whose insurance under the Plan terminated

because the Plan itself terminated.  It is therefore critical for the Court to determine when the

group policy terminated according to the terms of the Plan in order to decide whether Plaintiff

was covered by the Plan at the time of her surgery.

Principal argues that the group policy terminated on December 31, 2003, when Mr.

Hernandez notified Principal that he wanted to terminate the group plan effective December 31,

2003.  In making this argument, however, Principal neglected to explain which provision of the

policy supports its argument for when the group policy effectively terminated.  Principal merely

argued without support that Mr. Hernandez's notification terminated the group plan effective on

the day he requested termination.  The Court, however, cannot determine the reasonableness of

Principal's argument as to when the group policy terminated without examining the provision of

the Plan governing how to terminate the Plan and when termination occurs.  The Court therefore

orders the parties to submit additional briefing on the following issues: Explain on what date the

*group* policy terminated *according to the terms of the Plan*.  In other words, support the alleged

group policy termination date with the relevant Plan provision(s).  The parties must address

whether Part II, Section C, Article 2 (PLVIGIL 0031), is the relevant group policy termination

provision, and if so, what that provision means and whether or not it is ambiguous as to what

"premium due date" the provision refers given the evidence in the administrative record.  The

Court will reserve ruling on Principal's motion for summary judgment on Count I until briefing is

complete.

### 2.      Equitable Estoppel Claim

The Court will also reserve ruling on Defendant Principal's motion for summary judgment

on Plaintiff's equitable estoppel claim, until the parties have submitted their supplemental briefs

regarding the ambiguities, or lack thereof, in the Plan terms.  The Court, however, would also like

additional briefing directed to Plaintiff's equitable estoppel claim.  Specifically, the parties should

address the following issues in their supplemental briefs:  (1) provide support for why this Court

should or should not recognize an equitable estoppel claim; (2) assuming the Court were to find

that the Plan terms governing termination of the group policy are ambiguous, explain why

Defendant Lobo and Defendant Principal should or should not be held liable for Daniel

Hernandez's representations to Plaintiff under an equitable estoppel theory; and (3) explain

whether Plaintiff's equitable estoppel claim should be considered a separate claim or merely a

theory of recovery of benefits under 29 U.S.C. § 1132(a)(1)(B).

### 3.      Count II:  Prima Facie Tort

26

Principal argues that Plaintiff's prima facie tort claim in Count II must also be dismissed because it is preempted by ERISA and because, under New Mexico law, a prima facie tort claim cannot be asserted when it is based on the same facts as those that allegedly support an existing claim.  Principal contends that, because Plaintiff has stated a claim for benefits under ERISA, Plaintiff is precluded from asserting a prima facie tort claim.  In her response, Plaintiff did not offer any arguments in opposition to dismissal of her prima face tort claim.  Rather, Plaintiff stated:  "The Court dismissed the Prima Facie Tort Count in its June 3, 2005 Memorandum Opinion and Order.  Therefore, it is moot."  Pl.'s Resp. to Principal at 19.

On March 7, 2005, Defendant Lobo filed a motion to dismiss Plaintiff's claims in Counts I and II on the ground that each failed to state a claim upon which relief can be granted.  (Doc. No. 34).  This Court denied Lobo's motion to dismiss Plaintiff's denial of benefits claim in Count I but granted its motion to dismiss Plaintiff's prima facie tort claim in Count II as to Defendant Lobo.  Mem. Op. and Order (Doc. No. 48), filed June 3, 2005.  That Memorandum Opinion and Order, however, did not apply to Principal, and thus, Principal's motion for summary judgment as to Count II is not moot.  The Court nevertheless concludes that Count II should be dismissed as to Defendant Principal for the same reasons this Court dismissed Count II as to Defendant Lobo. *See id.* at 5 ("*Prima facie tort should be used to address wrongs that otherwise escape categorization, but should not be used to evade stringent requirements of other established doctrines of law*. . . Having found that the Plaintiff's allegations would state a claim upon which relief can be granted under ERISA, the Plaintiff cannot recover on her *prima facie* tort claim based on the same facts.  Her allegations do not escape categorization, . . . only procedural coherence.") (internal quotations omitted).

27

### 4.    Count III:  Punitive Damages

Principal argues that a claim for punitive damages is preempted by ERISA and that extra-contractual damages, such as punitive damages, are not recoverable in a claim for ERISA benefits as a matter of law.  Plaintiff contends that ERISA does not preempt her state claims and that punitive damages are available under ERISA, as evidenced by 29 U.S.C. § 1132(c), which provides for civil penalties against administrators in certain circumstances.

The Tenth Circuit has held that "punitive damages are not available in an ERISA action and that "nothing in section 502(a)(1)(B) supports damages beyond that section's language authorizing recovery of 'benefits due . . . under the terms of the plan.'"  *Zimmerman v. Sloss Equipment, Inc.*, 72 F.3d 822 (10th Cir. 1995).  *See also Conover v. Aetna US Health Care, Inc.*, 320 F.3d 1076, 1080 (10th Cir. 2003) ("Nowhere does the Employee Retirement Income Security Act allow consequential or punitive damages."); *Sage v. Automation, Inc. Pension Plan and Trust*, 845 F.2d 885, 888 n.2 ("We agree with the Fifth Circuit that punitive damages are not available in an ERISA action.").

The Court has ruled that Plaintiff's state law claims are preempted by ERISA, and thus Plaintiff cannot recover punitive damages under those causes of action.  Punitive damages are also not available under ERISA.  Principal is therefore entitled to summary judgment on Plaintiff's claim for punitive damages.

### E.    Lobo's Motion for Summary Judgment

### 1.    Count I:  ERISA

Defendant Lobo also asserts that it is entitled to summary judgment on Plaintiff's ERISA claim because the undisputed facts show that Lobo had no duty to provide insurance coverage

28

after Lobo terminated the group policy on Plaintiff's last day of employment with Lobo on

December 31, 2003.  Plaintiff argues that she is entitled to benefits based on continuation of

coverage provisions in the Plan and because Daniel Hernandez represented to Plaintiff that her

surgery would be covered.

The Court reserves ruling on Defendant Lobo's motion for summary judgment as to

Count I for the reasons stated above until after the parties submit their additional briefs.  As part

of the briefing, the Court would also like the parties to address what Defendant Lobo's status is

with respect to the Plan and whether Defendant Lobo can be held liable for Plaintiff's denial of

benefits claim under ERISA.

### 2.      Equitable Estoppel Claim

As discussed above, the Court deemed Plaintiff to have amended her complaint as a matter

of right to include an equitable estoppel claim.  The Court will also reserve ruling on Defendant

Lobo's motion for summary judgment on Plaintiff's equitable estoppel claim, until after the parties

have submitted their supplemental briefs.

### 3.      Count III:  Fraudulent Misrepresentation

The Court also deemed Plaintiff to have amended her complaint as a matter of right to

include the state law claim of fraudulent misrepresentation against Defendant Lobo.  Nevertheless,

for the same reasons that this Court denied as futile the amendment of her complaint to include

this claim against Defendant Principal, Defendant Lobo is entitled to summary judgment on this

claim because it is preempted by ERISA.  *See* cases cited *supra* at Section III.C.2.

### 4.      Count IV:  Intentional Infliction of Emotional Distress

Defendant Lobo is similarly entitled to summary judgment on Plaintiff's state law claim of

intentional infliction of emotional distress against Defendant Lobo because ERISA preempts this claim. *See* cases cited *supra* at Sec. III.C.2. Moreover, even if this claim were not preempted, Lobo is entitled to summary judgment on the merits of this claim.

To establish a claim of intentional infliction of emotional distress, the plaintiff must prove: (1) the defendant's conduct was extreme and outrageous; (2) the defendant's conduct was intentional or in reckless disregard of the plaintiff; (3) the plaintiff's mental distress was extreme and severe; and (4) there is a causal connection between the defendant's conduct and the plaintiff's mental distress. *Trujillo v. Northern Rio Arriba Elec. Coop, Inc.*, 2002-NMSC-004, ¶ 25, 131 N.M. 607, 41 P.3d 333. The trial court must determine as a matter of law whether the defendant's conduct was so extreme and outrageous that it will permit recovery under the tort. *Padwa v. Hadley*, 1999-NMCA-67, ¶ 9, 127 N.M. 416, 981 P.2d 1234. Although Mr. Hernandez told Plaintiff that, despite the closure of Lobo, the costs of Plaintiff's rescheduled surgery would still be covered, at that time, Mr. Hernandez himself did not know whether insurance coverage would be terminated on December 31, 2003, as he hoped that they would be granted a 30-day grace period for coverage, based on the premium payment he intended to make. There is no evidence that Mr. Hernandez's misrepresentations concerning coverage were made maliciously. In fact, Mr. Hernandez sent in a premium payment on December 31, 2003, and inquired of Principal whether it had a continuation policy that would cover Plaintiff. This conduct is not so outrageous and extreme as to go beyond all possible bounds of decency. Mr. Hernandez's actions in canceling the group policy because he sold his business similarly does not amount to extreme and outrageous conduct. The Court thus concludes that Defendant Lobo is entitled to summary judgment on this claim.

5.      **Count V:  Punitive Damages**

Lobo is also entitled to summary judgment on Plaintiff's claim for punitive damages.  As discussed in section III.D.4, punitive damages are not available under ERISA, and Plaintiff cannot recover damages under her state law claims because they are preempted by ERISA.

**IT IS THEREFORE ORDERED** that:

1.      Plaintiff's Motion to Strike Defendant Principal's Reply in Support of its Motion for Summary Judgment (Doc. No. 72) is **DENIED**;

2.      Plaintiff's Motion for Default Judgment against Lobo Campus Pharmacy, Inc. (Doc. No. 88) is **DENIED** as moot;

3.      The Court finds that on March 22, 2005, Plaintiff moved for leave to amend her Complaint against Defendants Lobo and Principal by attaching a proposed first amended complaint as an exhibit to her response to Defendant Lobo's motion to dismiss (*see* Doc. No. 38, Ex. 1).  Plaintiff's request for leave to amend her complaint as a matter of right as to Defendant Lobo to include claims for fraudulent misrepresentation, equitable estoppel based on federal common law, and intentional infliction of emotional distress is **GRANTED**.  Plaintiff's request for leave to amend her complaint to include a claim for equitable estoppel based on federal common law against Defendant Principal is also **GRANTED**.  Plaintiff's motion for leave to amend her complaint to add claims for fraudulent misrepresentation and intentional infliction of emotional distress against Defendant Principal is **DENIED**.  The Court also finds that Plaintiff never requested leave to amend her complaint to include a cause of action for continuation or conversion coverage under NMSA § 59A-18-16 against either Defendant Principal or Defendant

31

Lobo.

4.      Defendant Principal Life Insurance Company's Motion for Summary Judgment

(Doc. No. 63) is **GRANTED** as to Plaintiff's prima facie tort claim and is **GRANTED** as to

Plaintiff's claim for punitive damages.  The Court reserves ruling on Defendant Principal's motion

for summary judgment as to Plaintiff's claim for denial of benefits under ERISA and as to

Plaintiff's claim for equitable estoppel based on federal common law.

5.      Defendant Lobo Pharmacy Inc.'s Motion for Summary Judgment and

Memorandum in Support Thereof (Doc. No. 81) is **GRANTED** as to Plaintiff's fraudulent

misrepresentation claim, intentional infliction of emotional distress claim, and punitive damages

claim.  The Court reserves ruling on Defendant Lobo's motion for summary judgment as to

Plaintiff's claim for denial of benefits under ERISA and as to Plaintiff's claim for equitable

estoppel based on federal common law.

6.      The parties are ordered to submit briefs on the following issues:  (1) the parties

must address what the appropriate standard of review is for the Court in reviewing Principal's

decision to deny benefits and discuss the relevance of Part II, Section A, Article 12 of the Plan

(PLVIGIL 0026); (2) the parties must address whether a conflict of interest exists and, if so, how

it affects the standard of review; (3) the parties must clarify what evidence forms the

administrative record in this case, *i.e.*, what evidence and arguments were presented to the plan

administrator when it made its determination to deny benefits; (4) the parties must explain on

what date the *group* policy terminated *according to the terms of the Plan*, address whether Part

II, Section C, Article 2 (PLVIGIL 0031), is the relevant group policy termination provision, and if

so, explain what that provision means and whether or not it is ambiguous as to what "premium

due date" the provision refers given the evidence in the administrative record; (5) provide support for why this Court should or should not recognize an equitable estoppel claim; (6) assuming the Court were to find that the Plan terms governing termination of the group policy are ambiguous, explain why Defendant Lobo and Defendant Principal should or should not be held liable for Daniel Hernandez's representations to Plaintiff under an equitable estoppel theory; (7) explain whether Plaintiff's equitable estoppel claim should be considered a separate claim or merely a theory of recovery of benefits under 29 U.S.C. § 1132(a)(1)(B); and (8) discuss what Defendant Lobo's status is with respect to the Plan and whether Defendant Lobo can be held liable for Plaintiff's denial of benefits claim under ERISA.  The parties must not add any evidence to their briefs, but merely explain what evidence already before the Court the plan administrator used in making its decision.  Defendant Principal and Defendant Lobo must submit their briefs to the Court on or before the close of business on **OCTOBER 16, 2006**.  Plaintiff must submit her brief to the Court on or before the close of business on **NOVEMBER 6, 2006**.

_____

SENIOR UNITED STATES DISTRICT JUDGE

33